**IN THE UNITED STATES BANKRUPTCY
COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re | : Chapter 7 |
| COVENANT PARTNERS, L.P. | : |
| Debtor | : Bankruptcy No.  14-17568 |
| GARY F. SEITZ, TRUSTEE | : |
| Plaintiff | : |
| v. | : |
| WILLIAM B. FRETZ, JR. AND JOHN P. FREEMAN | : |
| Defendants | : Adv. No.  16-0226 |

# OPINION

By:  Stephen Raslavich, United States Bankruptcy Judge.

*Introduction*

Before the Court are cross motions for summary judgment. A hearing on the motions was held March 22, 2017. For the reasons which follow both motions will be denied.[1]

*The Complaint*

The Trustee seeks damages from defendants Fretz and Freeman for alleged violation of fiduciary duties owed to investors in the Debtor limited partnership.

---

[1]Because this ruling is interlocutory in nature, it does not implicate the jurisdictional limitations barring the entry of final orders by bankruptcy courts in non-core matters. *See* 28 U.S.C. § 157(c)(1); *In re Fleet*, 103 B.R. 578, 587 n.5 (E.D.Pa.1991); *In re Lloyd Securities, Inc.*, 1992 WL 119362, at *12 (Bankr.E.D.Pa. May 21, 1992); *In re Numedco, Inc.*, 1991 WL 204908, at *1 n.2 (Bankr.E.D.Pa. Oct. 7, 1991)

*Comparison of the
Respective Pleadings*

The pleadings are to an extent mirror images. Where the Trustee's motion is premised on the existence of fiduciary duties and the Defendants' alleged breach of them, the Defendants' motion denies such duties exist, and that even they did no breaches occurred. Each parties' responsive pleading restates these same positions. In addition, the Defendants' motion raises—once again—the affirmative defense of timeliness. In sum, the respective motions and responses join the following issues:

1. Whether the partnership agreement imposes fiduciary duties to the Debtor's limited partners.

2. Whether the Defendants breached those duties.

3. Assuming the Defendants breached those duties, to what measures of damages is the Trustee entitled.

4. Whether the applicable statute of limitations bars the Trustee's claims for misappropriation of funds and improper bonuses.

*Applicable Standard*

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."). Pursuant to Rule 56, summary judgment should be granted when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). For purposes of Rule 56, a fact is material if it might affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party has the burden of demonstrating

that no genuine issue of fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

The court's role in deciding a motion for summary judgment is not to weigh evidence, but rather to determine whether the evidence presented points to a disagreement that must be decided at trial, or whether the undisputed facts are so one sided that one party must prevail as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 251-252, 106 S.Ct. at 2512. In making this determination, the court must consider all of the evidence presented, drawing all reasonable inferences therefrom in the light most favorable to the nonmoving party, and against the movant. *See Halsey v. Pfeiffer*, 750 F.3d 273, 287 (3rd Cir. 2014).

To successfully oppose entry of summary judgment, the nonmoving party may not simply rest on its pleadings, but must designate specific factual averments through the use of affidavits or other permissible evidentiary material that demonstrate a triable factual dispute. *Celotex Corp. v. Catrett*, 477 U.S. at 324, 106 S.Ct. at 2553. Such evidence must be sufficient to support a jury's factual determination in favor of the nonmoving party. *Anderson, supra*, 477 U.S. at 249, 106 S.Ct. at 2511. Evidence that merely raises some metaphysical doubt regarding the validity of a material fact is insufficient to satisfy the nonmoving party's burden. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986). If the nonmoving party fails to adduce sufficient evidence in connection with an essential element of the case for which it bears the burden of proof at trial, the moving party is entitled to entry of summary judgment in its favor as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. at 322, 106 S.Ct. at 2552.

*Background*

Numerous salient facts are admitted and thus established without need for elaboration. They include the following: the Debtor was a private investment firm which was formed as a limited partnership under the law of the State of Delaware. Ans. ¶ 11. The Defendants were in control of the Debtor partnership. *Id.* 12, 13. In 2011 the Debtor was sued by the Pennsylvania Attorney General. *Id.* 19. In defending that suit, the Defendants and the Debtor incurred legal fees. *Id.* 20. Unable to pay those fees, the Defendants turned to Peter Frorer, a hedge fund manager, for financial assistance. Frorer Partners loaned the Debtor $300,000, and loaned Fretz and Freeman $450,000 and $50,000, respectively. *Id.* 23, 25. In 2012 Frorer demanded the Debtor and the Defendants post collateral for the loans. *Id.* 28. In January 2013 the Debtor paid Frorer $125,000 toward the balance due on its loan. *Id.* 74. In March 2013, the Defendants transferred 2.98 million shares of stock in the company known as Pet360 from the Debtor's portfolio to Frorer. *Id.* 93. In April 2013, the Defendants signed a document on behalf of the Debtor entitled Collateral Release Agreement ("CRA"). *Id.* 96, 99. In September 2013 the Defendants transferred another 2 million shares of Pet360 stock from the Debtor's portfolio to Frorer. *Id.* 111.

*Arguments Regarding*
*Fiduciary Duties*

To reiterate, the Trustee claims the Defendants breached fiduciary duties. The Defendants dispute that premise, maintaining that Delaware partnership law allows partners to waive fiduciary duties. They stress that the Debtor's Limited Partnership Agreement (LPA) contains no express provision regarding fiduciary responsibility. It neither mentions such duties, nor waives them as Delaware law allows. *See* 6 Del. C. §

4

17-1101(d) (allowing partners to waive fiduciary responsibility). The Defendants' rely on this as proof that no duties apply here. The Trustee argues to the contrary, directing the Court's attention to ¶ 1.2 of the LPA, which states that the agreement is subject to the provisions of the Delaware Revised Uniform Limited Partnership Act. He adds that the LPA indirectly provides for such duties in its indemnification provision. It states that a general partner guilty of harmful conduct resulting from either gross negligence or reckless or willful misconduct is not entitled to indemnification from the partnership. *Id.*

*Existence of*
*Fiduciary Duties*

The Defendants are correct that the LPA contains no express provision regarding fiduciary duties. However, where a partnership agreement does not mention fiduciary duties Delaware law presumes their applicability. *See Gotham Partners LP v. Hallwood Realty Partners L.P.,* 817 A.2d 160, 170 (Del.2002) (stating that general partner of limited partnership owes fiduciary duties unless contracted away). The two general categories of fiduciary duties which the Delaware Uniform Partnership Law provides for are those of loyalty and care. 6 Del. C. § 15-404(a); *TVI Corp. v. Gallagher*, 2013 WL 5809271, at *13 (Del.Ch. Oct. 28, 2013).[2] These duties are defined as follows:

> (b) A partner's duty of loyalty to the partnership and the other partners is limited to the following:
>
> (1) To account to the partnership and hold as trustee for it any property, profit or benefit derived by the partner in the conduct or winding up of the partnership business or affairs or derived from a use by the partner of partnership property, including the appropriation of a partnership opportunity;

---

[2] The duties ascribed to partners of Delaware *limited* partnerships are the same as those which apply to Delaware *general* partnerships. *See* 6 Del. C. § 17-403(b).

5

> (2) To refrain from dealing with the partnership in the conduct or winding up of the partnership business or affairs as or on behalf of a party having an interest adverse to the partnership; and
>
> (3) To refrain from competing with the partnership in the conduct of the partnership business or affairs before the dissolution of the partnership.
>
> (c) A partner's duty of care to the partnership and the other partners in the conduct and winding up of the partnership business or affairs is limited to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law.

6 Del C. § 15-404(b), (c); *see also Gotham Partners LP v. Hallwood Realty Partners LP*, 2000 WL 1476663, at *10 (Del.Ch. Sept. 27, 2000)(stating that the general partner of a Delaware limited partnership owes duties of care and loyalty to limited partners). Under the duty of loyalty, fiduciaries owe, inter alia, a duty to avoid financial or other cognizable fiduciary conflicts of interest. *In re PMTS Liquidating Corp.,* 452 B.R. 498, 509 (Bankr.D.Del. 2011). The duty of care entails management of the company with the "care which ordinary, careful, and prudent persons would use in similar circumstances." *In re Walt Disney Co. Deriv. Litig.*, 907 A.2d 693, 748 (Del. Ch. 2005) *aff'd* 906 A.2d 27 (Del.Ch. 2006).

    Based on the record and the foregoing authorities, the Court finds that the Defendants did owe duties of care and loyalty to the Debtor's limited partners.

*Were Duties Breached*

The Complaint alleges eight (8) ways in which the Defendants breached their fiduciary duties. *See* ¶ 173(a) – (h). The alleged breaches which are the subject of the Trustee's motion, however, are limited to the following six:[3]

(a) Causing the Debtor to effectuate the 2013 Transfers;

(b) Causing the Debtor to transfer 2,978,989 of the Debtor's Pet360 shares, worth approximately $3,000,000 to Frorer, in return for nothing of value, at a time when the Debtor was insolvent, and owed no money to Frorer and no more than $175,000 in principal amount to Frorer Partners;

(c) Purporting to make the Debtor liable for personal debts Fretz and Freeman owed to Frorer Partners;

(d) Agreeing to provide and thereafter causing the Debtor to provide its assets as collateral for the Fretz Loan and the Freeman Loan, at a time when Debtor was insolvent and in return for nothing of value to the Debtor;

(e) Causing the Debtor to transfer 2,000,000 of the Debtor's Pet360 shares worth approximately $2,000,000 to Frorer, in return for nothing of value, at a time when the Debtor was insolvent, and owed no money to Frorer and no more than $175,000 in principal amount to Frorer Partners;

…

(h) causing the Debtor, through willful violations of federal securities laws,and disregard for fiduciary duties owed to the Debtor's investors, to become liable to the SEC for over $5.8 million.

Complaint, ¶ 173(a) through (e), (h).

Five of the alleged breaches are direct and are said to have occurred 1) when the Defendants yielded to Frorer's demands for collateral to secure his loans to them and to the Debtor, 2) upon consolidation of those loans in the Debtor's name, and 3) by

---

[3] In his motion, the Trustee states that while his motion is based on the six violations set forth above, he is not waiving his right to pursue the remaining two violations in subparagraphs (f) and (g) should the Court deny his request for summary judgment. Tr. Mem. 1, fn. 1.

7

reason of the ultimate transfer of the Debtor's valuable stock holding (the Pet360 stock) to Frorer (subsection (a), (b), (c), (d), and (e)). The last alleged breach is derivative and arises from alleged federal securities law violations (subsection (h)).

*Analysis of Alleged Breach
of Duty of Care*

The Trustee contends that the Defendants breached both the duties of care and loyalty when they transferred almost 5 million shares of stock to satisfy a $175,000 debt. He maintains that because the stock was worth approximately $4 million, it was exchanged "for virtually nothing." Tr. Mem. 12. The Defendants contend that the Trustee's valuation is "based on pure hindsight." Opp'n. 24. They argue that because the stock was of little—or at best speculative—value, the decision to voluntarily transfer the stock to Frorer in order to avoid litigation made business sense. *Id*.

The Trustee's evidence is that the first 2.9 million shares of Pet360 stock transferred to Frorer in March 2013 had a value (even according to Forer) of $298,000.[4] That sum was obviously in excess of what was owed; i.e., $175,000.[5] Five months later (September 2013), Defendants transferred another 2 million shares of Pet360 stock to Frorer. By the time the Defendants had finished transferring stock to Frorer, the value of that stock was worth at least three times what the Debtor owed him and possibly as much as eighteen times greater. [6,7] The Trustee asserts that such actions cannot be explained or excused as an exercise of business judgment.

---

[4] 2.98 million shares @10¢/share = $298,000 (Tr. Mot. Ex A, Fretz Dep. 53:22-24)
[5] Ans. ¶ 74 Tr. Mot. Ex A; Fretz Dep. 47:24-48:6.
[6] Accepting Frorer's figure of 10¢ per share meant that in total the Defendants transferred shares worth $498,000 (4.98 million shares @ 10¢/share).
[7] Accepting the Debtor book valuation of 76¢/share would result in the total transferred shares being worth $3.78 million. (4.98 million shares @ 76¢/share) (Tr. Mot. Ex A, Fretz Dep. 54:10-22)

In contrast, the Defendants point to evidence which they say confirms that even the lower of the Trustee's two valuation figures; to wit, Frorer's valuation of 10¢/share, may be too high. They refer to the deposition of the Pet360 CEO, (a Mr. Weatherup), who testified that the Pet360 shares were illiquid. And while the shares would later be valued at $1/share when the company was acquired by PetSmart that did not occur until one year after they transferred the stock to Frorer. The second stock transfer occurred in September 2013, while the buyout occurred in September 2014. In the interim, Frorer is alleged to have conspired with Weatherup to have Defendant Freeman removed from the Pet360 board of directors. Def. Mot. Statement of Undisputed Material Facts ¶ 16. If true, then possibly the Defendants may not have been privy to the information regarding the potential upside value of the Pet360 shares when they were transferring that stock to Frorer. Under those circumstances, it may have made business sense to avoid risky and expensive litigation.

The Court finds there to be sufficient competent evidence to create triable issues of fact. While the Trustee's proofs support a conclusion that the value of the stock transferred was in excess of what was owed, the Defendants' evidence tends towards a conclusion that the exchange may have been roughly even. A trial is required to determine whether the stock transfers were a reasonable exercise of business judgment, or whether they constituted a violation of Defendants' duty of care.

*Analysis of Alleged*
*Breach of Duty of Loyalty*

Aside from alleging mismanagement of the Debtor's assets, the Trustee maintains that the Defendants are guilty of disloyalty. He claims that between the time of the two stock transfers they conspired with Frorer to increase the extent of the

Debtor's liability to him by signing the CRA. That agreement purported to obligate the Debtor for the loans to the Defendants, as well as the loan made to the Debtor. Tr. Mot. Ex. I, Ex. A, Fretz Dep. 66:22-67:6.

The Defendants' response is that the CRA is without any practical effect. The three loans, they say, were always treated as separate obligations and no consolidation of the liabilities ever occurred. Def. Mot., Fretz Dec. ¶ 12. This, they say, was also understood to be the case by the Debtor's CPA, Mr. Carrow. Def. Opp'n. 29.

It is premature to make a finding as to what the CRA proves in this context. Even assuming, as the Trustee maintains, that entering into the CRA was indefensible from the standpoint of the limited partners, it is unclear if damages were sustained by signing the agreement. The injury that is alleged to have been sustained by the limited partners was the loss of a partnership asset (the Pet360 stock shares). The signing of the CRA was related to that transfer but it did not effect it. The CRA lacks independent factual significance. Put differently, until the stock transfers are found to be wrongful, no finding is appropriate as to the propriety of the CRA.

*Resulting*
*SEC Liability*

The Court is likewise unable to conclude that the Debtor's liability to the SEC is the direct result of fiduciary failings on the Defendants' part. As proof to the contrary, the Trustee offers testimony and a copy of the SEC Offer of Settlement. In their Answer, the Defendants admit that the SEC investigated the Debtor. Ans. ¶ 164. That investigation would ultimately result in an Offer of Settlement signed by the Trustee on behalf of the Debtor. The offer specifically references the misconduct upon which the Trustee's motion is based. The Trustee argues that this was proof of the strength of the SEC's

case against the Debtor. He testified that it was on that basis that he agreed to allow the SEC a $5.8 million Proof of Claim. Tr. Mem. 17-19.

The Defendants contend that the Offer of Settlement, while relevant, is inadmissible due to its prejudicial nature. They maintain that it is a settlement not an adjudication on the merits, and thus without preclusive effect. Opp'n 36. In particular, they argue that parties typically enter into Offers of Settlement with the SEC without admitting or denying the underlying charges. For that reason, such offers, while relevant, may not be considered by the court. *Id.* 37.

The question as to the admissibility of the SEC agreement is governed by Federal Rule of Evidence 408. That rule deals with the admissibility of compromise offers and negotiations:

> (a) Prohibited Uses. Evidence of the following is not admissible--on behalf of any party--either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
>
> (1) furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and
>
> (2) conduct or a statement made during compromise negotiations about the claim--except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.
>
> (b) Exceptions. The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Fed. R. Evid. 408, made applicable by B.R. 9017.

The application of the rule is limited to evidence concerning settlement or compromise of a claim where the evidence is offered to establish liability, or the validity or amount of the claim. *Affiliated Mfrs., Inc. v. Aluminum Co. of Am.*, 56 F.3d 521, 526

(3d Cir. 1995). Additionally, Rule 408 has been interpreted as applicable to an actual dispute, or at least an apparent difference of view between the parties concerning the validity or amount of a claim. 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 408.06 (2d ed. 2002); Kenneth S. Brown et al., 2 *McCormick on Evidence* § 266, 7th ed. 2016). The policy behind Rule 408 is to encourage freedom of discussion with regard to compromise. *See Weinstein's Evidence, supra*, § 408.02[3]. An SEC Offer of Settlement has been deemed inadmissible under this evidentiary rule. *Option Resource Group v. Chambers Dev. Co.*, 967 F.Supp.846, 849 (W.D.Pa. 1996). The Court agrees with Defendants on this point. The circumstances preclude the Court from making findings of fact based on the SEC settlement.

This leaves his own testimony on the issue as the only other evidence offered by the Trustee. His testimony, however, was largely hearsay. The thrust of it went to his decision to settle with the SEC. He explained that the agency informed him that their position was that all of the funds obtained from investors and proceeds therefrom were ill-gotten because the Defendants breached their obligations in dealing with those funds and misrepresented what they would do with the funds. The problem for the Trustee at this juncture is that there is no admissible evidence before the Court to otherwise support his case. As no finding may be made on the question of liability, neither may a conclusion of law be reached on it.

*Damages*

Because the record fails to support a definitive finding of a fiduciary breach, any discussion of damages is premature. Should the Trustee prevail at trial, the question can be revisited.

*Statute of Limitations*

The Court turns to the Defendants' challenge to the Trustee's claim that they misappropriated investor funds and paid themselves unearned bonuses. Their challenge is based on timeliness. Def's. Mem. 17-20. In response, the Trustee refers to the Opinion denying Defendants' Motion for judgment on the pleadings. The Trustee contends that the same limitations argument was made in that motion and was rejected. *See In re Covenant Partners, L.P.,* 2017 WL 838637, at **5-6 (Bankr.E.D.Pa., Mar. 2, 2017). The Trustee reads the Court's ruling on that challenge as leaving open the question of whether equitable tolling might excuse any lateness. Tr. Opp'n . 19.

The Trustee's recall of the Court's ruling is partly correct. As to the claim of misapplied investor funds, the Court found that the claim was timely on its face. The applicable limitations period is three years. The Complaint alleged that the misconduct occurred from 2008 through 2012. The bankruptcy case was filed in September 2014, so the three year limitations period had not yet run on the petition date, at least as to some of that alleged misconduct. Bankruptcy Code § 108 gives a trustee an additional two years from the petition date to file suit on such a claim. The Trustee sued in July 2016, and the Court thus found no issue with timeliness as to that portion of his claim. *See Covenant, supra*, *id.*, at *5.

Where the Court identified a potential timing problem was with regard to the claim that the Defendants improperly paid themselves bonuses. The bonus payments were alleged to have occurred in the years 2009 and 2010. On the face of it, more than 3 years had expired since the last payment and no suit had been filed. By the time of the bankruptcy filing 4 years had passed. The Court observed that § 108 does not

13

extend a statute of limitations which has run prior to the petition date. *Id.* The Court also observed, however, that Delaware law will relax a limitations bar when a plaintiff had no way of knowing that they had a pending claim. There is a question as to what the limited partners knew about how the Defendants paid themselves. Fretz avers in his declaration that it was his belief that the investors understood his compensation and did not object to it because it was always explained to them in great detail. Defs. Opp'n Fretz Dec. ¶¶ 11-12. As it is in his interest to say this, perhaps little weight should be ascribed to his statement. Still, it remains unclear what information the limited partners were given regarding management compensation and when they had that information. This leaves an insufficient basis for the Court to determine whether circumstances exist which might excuse the apparent untimeliness of the Trustee's wrongful performance payments claim.

*Summary*

1.  The Trustee has demonstrated that the Defendants owed fiduciary duties to the Debtor's limited partners. On this record, however, he has failed to show that the Defendants breached their fiduciary duties of care and loyalty when they transferred stock from the Debtor's portfolio to Peter Frorer.

2.  The Trustee is not (on this record) entitled to recover an amount equal to the SEC's claim against the estate.

3.  The Defendants have failed to establish that the Trustee's claims for misappropriation of investor funds and payment of unearned performance fees are untimely.

For these reasons, both motions for summary judgment will be denied.

An appropriate Order follows.

By the Court:

*[signature]*

_____
Stephen Raslavich
United States Bankruptcy Judge

Dated:  August 30, 2017